UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRUCE E. SMITH,

        Petitioner,

v.

JEFFREY UTTECHT,

        Respondent.

Case No. C06-5678RJB

ORDER DENYING PETITION
FOR WRIT OF HABEAS
CORPUS

This matter comes before the court on petitioner's petition for writ of habeas corpus. The court has considered the relevant documents and the remainder of the file herein.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed this petition for writ of habeas corpus to challenge his May 24, 2002 Pierce County Superior Court conviction by jury verdict of Murder in the First Degree (Count 1), Burglary in the First Degree (Count II), Rape in the First Degree (Count (III), and Vehicular Homicide (Count V). Dkt. 27, Exh. 1. The Vehicular Homicide (Count V) merged into Count I. *Id.* at 2. Petitioner was sentenced to life without the possibility of parole, Counts I and III to run consecutively. *Id.* at 4.

The Washington Court of Appeals summarized the facts of the case as follows:

On January 11, 2002, at approximately 7:00 A.M., Bruce Eric Smith parked a Jeep Cherokee outside the Ainsworth Court apartments in Pierce County, Washington. When Smith exited the Jeep, he left the headlights, music system, and engine on, and left the driver's side door open.

Smith entered A.T.'s unlocked apartment while she was getting ready for work. A.T. did not know Smith and had never seen him before. Smith pushed A.T. down on her bed, turned her over, ripped off her pants and undergarments, and digitally penetrated her vagina with the tip of his thumb. Smith struck A.T. repeatedly about her face and head as the two struggled. Smith had his penis outside his boxers and manipulated it in an attempt to get an erection. During the attack, A.T. made telephone calls to 911, her workplace, her mother, and her boyfriend.

Around 6:45 A.M. Pierce County Sheriff's Deputy Robert Nilsen was serving a protection order at the apartments in an unrelated case. Nilsen first noticed the Jeep when he parked his unmarked police vehicle. After attempting to serve the order, Nilsen briefly inspected the Jeep and contacted dispatch to inquire about its status and whether it had been chased by other police vehicles. During his second conversation with dispatch, Nilsen learned that 911 had just received a "trouble unknown call with a lady screaming on the phone" from the apartments. II Report of Proceedings (RP) at 294.

A few minutes later, Nilsen heard a commotion coming from inside the apartments. Nilsen then saw Smith, who was not wearing a shirt, exit the apartments and enter the Jeep. Nilsen activated his emergency lights and pulled in behind the Jeep. Smith accelerated backwards and rammed into Nilsen's vehicle.

Nilsen pursued Smith until he saw the Jeep .basically go sideways through the air. after colliding with an Acura driven by Russell Whitaker, II. II RP at 309-010 (sic). Whitaker was pronounced dead at the scene. Subsequent testing revealed that Smith had phencyclidine (PCP) in his bloodstream on January 11.

The State charged Smith with first degree felony murder, RCW 9A.32.030(1)(c); first degree burglary, RCW 9A.52.020(1)(b); first degree rape, RCW 9A.44.040(1)(d); third degree assault, RCW 9A.36.031(1)(h); and vehicular homicide, RCW 46.61.520.

At trial, Deputy Paul Evans, an accident reconstructionist with the Pierce County Sheriff's Office, testified:

> Q: What happened at that point?
>
> A: I asked [Smith] basically his condition. I saw that his mouth was bloody. I stuck my head into the confines of the car, close enough that I could—if there was any signs or smells of intoxicants that would give me the opportunity to locate them, but at the same time far enough away for an officer safety issue.
>
> Q: What happened when you did that?
>
> A: I didn't smell any order of intoxicants about his person. I didn't get close enough to his face, it was bloody, it was messed. I didn't smell any. But I asked him, is he okay. Let me look at your face and look at you—he somewhat ignored me.
>
> Q: Why do you say that?
> . . .
> A: Well, why do I say that he ignored me? Because he wasn't responsive to me.

III RP at 382.

Evans also testified:

> Q: Did you make any other observations of [Smith], keeping in mind that you are looking for signs, possible signs of impairment?

|     |     |
| --- | --- |
| 1   | A: I did. |
| 2   | Q: Can you explain what those observations were? |
| 3   | A: I noted that his eyes were dilated. I noted that his eyes were bloodshot. He didn't answer me right away. But those are the things that I noted, the physical observations that I noted. |
| 4   |     |
| 5   | III RP at 384. |
| 6   | Later, Deputy Michael Yamada testified as follows: |
| 7   | Q: What were your initial observations of [Smith's] demeanor? |
| 8   | A: He didn't say much. He wasn't combative or anything. Just, it would seem normal to be dazed, coming out of the vehicle. |
| 9   | . . . |
| 10  | Q: Did you note any other injuries at that point, other than the apparent mouth injuries? |
| 11  | A: No. |
| 12  | Q: When he would speak to you, did you have any difficulty understanding what he was telling you? |
| 13  | A: No. He wasn't really willing to say much. |
| 14  | . . . |
| 15  | Q: Based on your contact with the defendant, did you form an opinion whether or not the defendant appeared to be intoxicated? |
| 16  | A: Just on my personal contact with the subject, no. |
| 17  | Q: Why do you say that? |
| 18  | A: He didn't speak much to me. I didn't note the odor of intoxicants when I was next to him or near him. When he did answer questions and he spoke to me I could not smell any odor of intoxicants. |
| 19  |     |
| 20  | . . . Q: Do you recall if he complained of any pain? |
| 21  | A: He wouldn't speak much to me, even about that. |
| 22  | III RP at 445-46, 448-49. |
| 23  | After Evans and Yamada testified, the State requested a CrR 3.5 hearing. At the 3.5 hearing on April 8, the trial court denied Smith's motion for a continuance in order to prepare for the hearing. The trial court concluded that Yamada's questions regarding Smith's identity and health were not interrogation for *Miranda* (Court's footnote 2: *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)) purposes and that because Smith did not make any statements to Yamada, it need not address admissibility. The trial court also concluded that the questioning by Nilson [sic] and Evans did not implicate *Miranda* and that Smith's statements were admissible. |
| 24  |     |
| 25  |     |
| 26  |     |
| 27  | A jury convicted Smith as charged on April 11, 2002. The court sentenced Smith to life in prison without the possibility of parole on May 24, 2002. |
| 28  |     |

ORDER
Page - 3

Dkt. 27, Exh. 2, *State v. Smith*, Washington Court of Appeals Cause No. 28882-6-II, at 1-4.

Petitioner filed a direct appeal with the Washington Court of Appeals, raising the following issues:

1. The trial court erred when over defense objection and without the protections of a CrR 3.5 hearing it permitted police officers to testify in front of the jury about what Mr. Smith said and did in response to police questions.

2. The trial court erred when over defense objection and without the protections of a CrR 3.5 hearing it permitted police officers to comment on Mr. Smith's post arrest post-*Miranda* silence.

3. The trial court erred when it denied the defense's motion for a recess to prepare for a midtrial CrR 3.5 suppression hearing on the issue of whether Mr. Smith had the capacity to understand *Miranda* rights.

Dkt. 27, Exh. 3 at 3. On March 23, 2004, the Court of Appeals affirmed the conviction. Dkt. 27, Exh. 2.

Petitioner filed a petition for review with the Washington Supreme Court, raising the following grounds for review:

Whether a criminal defendant is denied due process when the trial court denies the defendant's request for a CrR 3.5 hearing and the State elicits over defense objection the defendant's post-Miranda invocation of silence as evidence of lack of diminished capacity?

Whether a criminal defendant is denied due process when the court grants the State's request for a mid-trial CrR 3.5 hearing after the State has elicited testimony regarding the defendant's post-Miranda invocation of silence and denies the defendant a recess to prepare?

Dkt. 27, Exh. 4 at 1. On November 4, 2004, the Washington Supreme Court denied the petition for review. Dkt. 27, Exh. 5.

On July 18, 2005, petitioner filed a personal restraint petition, raising the following claims for relief:

I. THE PETITIONER'S CONVICTION SHOULD BE VACATED BECAUSE NEWLY DISCOVERED EVIDENCE REVEALS HE WAS INSANE DUE TO THE EFFECTS OF INVOLUNTARY INTOXICATION

II. THE MISCONDUCT OF THE PROSECUTOR DURING CLOSING ARGUMENT WARRANTS A NEW TRIAL

Dkt. 27, Exh. 6 at 7, 12. Petitioner also argued that his counsel was deficient because he failed to discover the existence of Thomas Butler, a witness that petitioner contends would testify on his behalf. Dkt. 27, Exh. 6, at 13.

In support of the personal restraint petition, petitioner submitted a July 13, 2005 affidavit of Thomas Butler, an inmate at the Washington State Penitentiary, which provided in relevant part as follows:

2. ON JANUARY 10, 2002, I WENT TO TACOMA WITH A FRIEND OF MINE AROUND 6:30M P.M.. WE ARRIVED AT ABOUT 10:00, MIDNIGHT. AS SHE DID THE HAIR OF THIS ONE WOMAN, I WATCHED VIDEOS. SHE FINISHED AROUND 1:30 A.M., AND WE LEFT.

3. SHE CALLED HER AUNTIE TO STOP BY AND PICK UP SOME CLOTHES. HER AUNTIE TOLD HER TO COME BY. SO WE WENT THERE.

4. HER AUNTIE ASKED IS [sic] SHE WAS HUNGRY. WHILE THERE WE ATE RIBS AND SOME OTHER STUFF.

5. THERE WERE ABOUT TWO OTHER PEOPLE THERE IN HER AUNTIES [sic] LIVING ROOM. I PLAYED ON HER AUNTIES [sic] PLAY STATION WITH ANOTHER GENTLEMAN NAMED BRUCE SMITH.

6. SMITH ASKED ONE OF THE OTHER P0EOPLE (I THINK IT WAS THE FEMALE) FOR A CIGARETTE. WHEN SHE SAID SHE DIDN'T HAVE ANY, I OFFERED SMITH ONE OF MINE. I TOLD HIM THAT I SMOKE MOORE'[S AND HE REPLIED AND SAID NO NEWPORT'S. I SAID NO, AND HE SAID I'LL TAKE A MOORE THEN. I WAS STILL PLAYING THE PLAY STATION SO I TOLD HIM TO GET ONE OUT OF MY PACK THAT WAS IN MY SHIRT POCKET THAT I WAS WEARING. HE TOOK ONE OUT AND PUT MY PACK BACK IN MY POCKET. HE LIT IT AND TOOK A BIG PUFF. WHEN HE BLEW THE SMOKE OUT OF HIS MOUTH, I COULD TELL BY THE SMELL THAT HE HAD TOOK THE WRONG CIGARETTE. SMITH LOOKED A ME AND SAID "WHAT IS THIS"? i GRABBED THE "CIGARETTE", FROM HIS HAND AND TOLD HIM THAT IT'S MY FAULT, THAT I HAD FORGOT I HAD THIS IN MY PACK OF CIGARETTES. THEN EVERYBODY WHO WAS THERE STARTED ASKING ME WHAT IT WAS.

7. EARLIER THAT DAY I HAD BOUGHT A MOORE CIGARETTE THAT WAS LACE [sic] WITH "SHERM". IN OTHER WORDS, IT WAS "PCP". THAT WAS THE CIGARETTE THAT SMITH HAD TAKEN A DRAG FROM.

8. SMITH THEN STARTED GRABBING AND TRYING TO FEEL ON ME AND KISS ME. I PUSHED HIM OFF ME, THEN HE STARTED AT THE ONE FEMALE THAT WAS IN THE LIVING ROOM WITH US. HE KEPT TELLING HER THAT SHE WAS HIS GIRLFRIEND.

9. MY FRIENDS [sic] AUNTIE TOLD US TO LEAVE BECAUSE SHE DID NOT ALLOW DRUGS IN HER HOUSE. AS WE WERE LEAVING, HER AUNTIE ASKED SMITH IF HE WAS ALRIGHT [sic], BUT HE JUST SAT THERE WITH HIS EYES BLOODSHOT RED SAYING NOTHING. SOMEBODY TOLD SMITH "LET'S GO".

Dkt. 27, Exh. 6, Affidavit of Thomas Butler.

On June 1, 2006, the Washington Court of Appeals dismissed the petition. Dkt. 27, Exh. 7. Petitioner filed a motion for reconsideration, which the Washington Supreme Court considered a motion for discretionary review. Dkt. 27, Exh. 8 and 9. On August 29, 2006, the Washington Supreme Court Commissioner denied review; petitioner's motions to modify, clarify, and supplement were denied. Dkt. 27, Exh. 9, 10, 11, 12 and 13.

## CLAIMS

Petitioner filed four documents in this case that appear to present the grounds upon which he requests relief. Dkt. 9, 15, 18, and 34. Petitioner's claims appear to be set forth most clearly and comprehensively in Dkt. 15, and are as follows:

> Claim One: 3.5 Suppression of evidence. Whether I was denied due process when the trial court denied my request for a criminal rule 3.5 hearing and state elicits over defense objection, the defendants [sic] post-Miranda invocation of silence as evidence as [sic] diminished capacity.
>
> Claim Two: I have newly discovered evidence that shows that I was involuntarily intoxicated, and evidence that my ability to conform my conduct to the requirements of the law was substantially absent, RP 662, and testimony that people under the influence of the P.C.P. is "unconscious" RP 646, the newly discovered evidence has never been discovered or argued concerning the P.C.P. ingestion.
>
> Claim Three: Prosecutorial Misconduct –prosecutor committed prejudicial misconduct in violation of the rules of professional conduct: prosecutor commenting on evidence not in the record. RP 848, Lines 18-23.

Dkt. 15, at 5, 7, and 8.

On August 30, 2007, the magistrate judge issued a Report and Recommendation, concluding that petitioner's first claim for relief was unexhausted and procedurally barred. Dkt. 35. The Report and Recommendation did not review petitioner's second and third claims because the magistrate judge concluded that the unexhausted claim rendered the petition a "mixed petition" that should be dismissed. *See Rose v. Lundy*, 455 U.S. 509 (1982). However, because claim one, the unexhausted claim, as discussed below, is procedurally barred, petitioner would not have the option of exhausting the claim in

ORDER
Page - 6

state court. Accordingly, this petition is not a mixed petition. Claims two and three were exhausted in state court and are properly presented to this court. Therefore, the court has reviewed all of the claims petitioner has raised in this habeas petition.

The court notes that the record is somewhat disjointed, but the court has been able to review the record in its entirety.

## STANDARD OF REVIEW

A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in the state courts unless the adjudication either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. 28 U.S.C. §2254(d). Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Id.

A determination of a factual issue by a state court shall be presumed correct, and the applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1).

## DISCUSSION

**1. Suppression Hearing**

Petitioner claims that his right to due process was violated when the trial court denied his request

ORDER
Page - 7

for a criminal rule 3.5 hearing regarding testimony of police officers about his "post-Miranda invocation of silence as evidence as [sic] diminished capacity." Dkt. 15, at 5.

Before claims may be raised in a federal habeas corpus petition, state remedies must be exhausted; or an applicant must show there is either an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1); *see also Rose v. Lundy*, 455 U.S. 509 (1982). A claim has been exhausted once it has been fairly presented to the state's highest court and the court has had the opportunity to rule on the merits of the claim. *See O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1733-34 (1999); *Picard v. Connor*, 404 U.S. 270, 275-276 (1971); *Batchelor v. Cupp*, 693 F.2d 859, 862(9th Cir. 1982), *cert. denied*, 463 U.S. 1212 (1983).

A petitioner must present the claims to the state's highest court based upon the same federal legal theory and factual basis as the claims are subsequently asserted in the habeas petition. *Hudson v. Rushen*, 686 F.2d 826, 829-830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Schiers v. California*, 333 F.2d 173, 176 (9th Cir. 1964). Specifically, a petitioner must apprise the state courts that an alleged error is not only a violation of state law, but a violation of the Constitution. *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995). Vague references to broad constitutional principles such as due process, equal protection, or a fair trial do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 120 S.Ct. 815 (2000). A petitioner must include reference to a specific federal constitutional guarantee as well as a statement of the facts that entitle the petitioner to relief. *Gray v. Netherland*, 518 U.S., at 162-163.

A petitioner who has not exhausted state court remedies may be excluded from presenting the issues to the state's highest court when the petitioner has not complied with a state procedural rule. *Harris*

*v. Reed*, 489 U.S. 255, 260 (1989).

When a state prisoner defaults on federal habeas claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750-751 (1991).

In the Report and Recommendation, the magistrate judge concluded that this claim was unexhausted and procedurally barred. Dkt. 35. Petitioner appears to recognize that this issue was unexhausted. In objections to the Report and Recommendation, petitioner stated as follows:

> The reason Mr. Smith did not address directly or indirectly the 3.5 issue in his response to answer brief is because it was struck from all documents that was [sic] filed, if this court also look in Mr. Smith [sic] response to answer brief (Dkt #34). This court would again see clearly that the only two grounds in it Mr. Smith is arguing is ground's [sic] 1. Newly Discovered Evidence [and] 2. Prosecutor misconduct.

Dkt. 37, at 3. The court concurs with the reasoning and conclusion of the magistrate judge. The claim is unexhausted and procedurally barred from consideration in this habeas proceeding.

**2. Newly Discovered Evidence**

Petitioner contends that newly discovered evidence, based upon the declaration of Thomas Butler, shows that he did not intend to ingest PCP; that, as a result of his involuntary intoxication, he was unable to conform his conduct to the requirements of the law; and that he could not have informed the intent to commit the crimes for which he was convicted.

In rejecting this claim raised in petitioner's personal restraint petition, the Court of Appeals concluded as follows:

> Smith had phencyclidine (PCP) in his bloodstream on September 11, 2002, the date of his offenses. His defense at trial, apart from a general denial, was diminished capacity because of voluntary intoxication. The affidavit Smith submits with his petition is from Thomas Butler and states that Butler mistakenly gave Smith a cigarette laced with PCP in the early morning hours of September

ORDER
Page - 9

> 11, 2002. Smith states that until he received Butler's affidavit on July 6, 2005, he had no idea how he ingested the PCP. Smith contends that had the contents of Butler's affidavit had been known at the time off trial, he would have been entitled to an insanity defense based on involuntary intoxication.
>
> Smith's statement that he had no idea how he ingested the PCP until he received Butler's affidavit conflicts with the record. One of his expert witnesses testified that Smith told him he smoked a marijuana cigarette laced with PCP before the crimes occurred. RP 678. Furthermore, even though Smith contends that Butler's information could not have been discovered before trial, he provides no explanation for this assertion or for the sudden appearance of Butler's affidavit. Because he makes no showing that the information Butler discloses could not have been discovered before trial with the exercise of due diligence, the affidavit does not qualify as newly discovered evidence.
>
> Smith also asserts that he received ineffective assistance of counsel because his attorney failed to discover Butler's existence before trial. Having already asserted that Butler's affidavit could not have been discovered before trial, Smith does not succeed in showing that his attorney's pretrial investigation was deficient. *See State v. Hendrickson*, 129 Wn.2d61, 77-78 (1996)(defendant who raises claim of ineffective assistance of counsel must show that his attorney's performance was deficient and that the deficiency was prejudicial.

Dkt. 27, Exh. 7, at 1-2.

The Washington Supreme Court Commissioner denied review of this claim, concluding that petitioner failed to demonstrate that the "new" evidence could not have been discovered prior to trial, and that the "new" evidence would probably change the result of the trial. Dkt. 27, Exh. 9.

Claims of actual innocence based upon newly discovered evidence do not constitute a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Federal habeas review is limited to claims of constitutional violations occurring in the course of the underlying state criminal proceeding. *Id.* at 416. The existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus. *Townsend v. Sain*, 372 U.S. 293, 317 (1963); *Barefoot v. Estelle*, 463 U.S. 880, 887 (1983); *Swan v. Peterson*, 6 F.3d 1373 (9th Cir. 1993), *cert denied*, 115 S.Ct. 479 (1994); *Clark v. Lewis*, 1 F.3d 814 (9th Cir. 1993).

Petitioner contends that Mr. Butler's declaration shows that petitioner did not know that the

cigarette Mr. Butler allegedly gave to him had PCP in it, and that, because of the effect of the PCP, he could not have premeditated or had the specific intent to commit the crimes.

The information contained in Mr. Butler's declaration does not meet the standard for habeas relief. First, the declaration conflicts with Dr. Mark Whitehill's testimony that petitioner told him that "he smoked some, what is called 'sherm,' marijuana that's laced with PCP." RP 678. Second, petitioner has not shown why the information in Mr. Butler's statement, or the identity of Mr. Butler, could not have been discovered prior to trial. Third, petitioner's claim that his counsel was ineffective for failing to discover the information related to Mr. Butler is without merit because petitioner claims that this declaration was newly discovered, at the time petitioner filed his state personal restraint petition, long after the trial. Finally, while Mr. Butler's statement may have had some relevance to the issues, in light of all of the other evidence admitted at trial, the information in the statement does not establish that petitioner was actually innocent of the crimes for which he was convicted, nor does it establish that petitioner was denied a fair trial by his alleged inability to introduce that evidence at trial.

The state court decisions rejecting petitioner's claim of newly discovered evidence were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. This claim does not merit habeas relief.

**3. Prosecutorial Misconduct**

Petitioner contends that, in his closing statement, the prosecutor committed prejudicial misconduct when he made the following statement:

> The only thing that the testimony regarding the PCP establishes is that this defendant chose to smoke sherm, to dip cigarettes or marijuana cigarettes, something into PCP, smoke it, get high, turn himself loose on this community, and create victims in his wake. And he did that here. His actions demonstrate he acted intentionally.

RP 848, Lines 17-23. *See* Dkt. 15, at 8, Ground Three.

The relevant question in evaluating whether prosecutorial misconduct warrants habeas relief is whether the misconduct denied the defendant a fair trial. Prosecutorial misconduct would deny a defendant a fair trial if the comments so infected the trial with unfairness as to make the resultant conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). During closing argument, the prosecutor has wide latitude, including the freedom to argue reasonable inferences based on the evidence. *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir.1991).

The prosecutor's argument was based upon Dr. Whitehill's testimony. RP 848. See RP 678 (petitioner told Dr. Whitehill that "he smoked some, what is called 'sherm,' marijuana that's laced with PCP"). The prosecutor's argument was a reasonable inference based upon the evidence. Petitioner's claim of prosecutorial misconduct is without merit.

The state court decisions rejecting petitioner's claim of prosecutorial misconduct were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented to the state courts. This claim does not merit habeas relief.

**4. Conclusion**

Petitioner's claim related to the suppression hearing is unexhausted and procedurally barred. His claims regarding newly discovered evidence and prosecutorial misconduct do not warrant habeas relief. The petition for writ of habeas corpus should be denied.

Therefore, it is hereby

**ORDERED** that the petition for writ of habeas corpus is **DENIED.**

The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 12th day of October, 2007.

/s/ Robert J. Bryan
ROBERT J. BRYAN
United States District Judge